**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | Crim. Action No. 19-125 (RMB) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| JUAN SEGUNDO PANDO-AUCAY | : | |
| | : | |

Appearances:

Maggie F. Moy, Esquire
Office Of Federal Public Defender
800-840 Cooper Street, Suite 300
Camden, New Jersey 08102

Kristen M. Harberg, AUSA
Office of The U.S. Attorney
District Of New Jersey
401 Market Street, 4th Floor
Camden, New Jersey 08101

**BUMB**, United States District Judge:

On February 20, 2019, a federal grand jury returned a one-count Indictment against Defendant Juan Pando-Aucay, charging him with illegally re-entering the country in violation of 8 U.S.C. § 1326(a). The Indictment alleges that on December 25, 2018, Defendant was found in the United States after being deported on December 3, 2012. The facts leading up to

Defendant's arrest and subsequent Indictment do not appear to be contested.[1]

I. Background

A. The Removal Proceedings from 2006 through 2012

On July 31, 2006, Immigration and Customs Enforcement ("ICE") officers encountered Defendant at his residence in Riverside, New Jersey. (Form I-213 Record of Deportable/Inadmissible Alien, dated 7/31/06, obtained from the Defendant's Alien File), attached to Government's Opposition, at Id., at Ex. A.

An ICE officer served Defendant with a copy of the Notice to Appear ("NTA"), which advised him of the charges and the statutory grounds for removal. Id., at Ex. B (Form I-862, Notice to Appear, dated 7/31/06, bearing a "COPY" watermark, obtained from the defendant's Alien File). The NTA also informed Defendant of his various rights, the parameters of the removal proceedings, and the consequences if he failed to appear at any of the hearings set by the Immigration Court. Id., Ex. B, at p. 2.

The NTA listed Defendant as the respondent in the removal proceeding. Id., Ex. B, at p. 1. The Government contends that in the space provided for the Defendant's current residence, it

---

[1] The following parts ae primarily taken from the Government's Memorandum [Docket No. 16]

appears that some writing may have been entered and then redacted.  In any event, the address Detention and Removal, 3900 N. Powerline Road, Pompano Beach, Florida 33073 was stamped on the form.[2]  Id.  The NTA stated that Defendant was ordered to appear before an Immigration Judge in Elizabeth, New Jersey, on a date to be set.  Id.  Defendant signed the Certificate of Service[3] on the back of the NTA, indicating that it had been served on him in person.  Id., Ex. B., at p. 2.

Bond was set at $7,500.00, and Defendant was remanded to the Elizabeth Detention Center in Elizabeth, New Jersey, in default of bond.  Id., Ex. A, p. 2; Ex. C. (Form I-286, Notice of Custody Determination, dated 7/31/06, certified copy obtained from the Executive Office for Immigration Review's ("EOIR") Record of Proceeding).  On August 8, 2006, Defendant was transferred from the Elizabeth Detention Facility to the Krome District Control Office in Miami, Florida, and he was housed at the Broward Transitional Center ("BTC") in Pompano Beach, Florida.  Id. at Ex. D (redacted Form I-203A, Order to Detain or

---

[2] According to the Government, this is the address for a detention facility known as the Broward Transitional Center, the "BTC", in Florida.

[3] The typewritten date on the Certificate of Service -- July 21, 2006 -- must be a typographical error, as the Defendant was not apprehended and therefore could not have been served with the NTA until July 31, 2006.

Release Aliens, obtained from the defendant's Alien File); _Id._ at Ex. E (redacted Form I-216, Record of Persons and Property Transferred, obtained from the defendant's Alien File)].

On August 14, 2006, the Immigration and Naturalization Service ("INS") filed the NTA with the Department of Justice, Executive Office for Immigration Review, U.S. Immigration Court, in Krome, Florida. _Id._, Ex. F (Form I-862, Notice to Appear, dated 7/31/06, stamped received on 8/14/06, certified copy obtained from the EOIR's Record of Proceeding)]. The NTA reflected that Defendant's residence was at the BTC in Pompano Beach, Florida. _Id._, Ex. F, p. 1. The NTA ordered Defendant to appear before an Immigration Judge at the BTC. _Id._, Ex. B, at p. 1; _Id._, Ex. F., p. 1.

Also on August 14, 2006, the BTC Custodial Officer served a Notice of Hearing ("NOH") on Defendant advising Defendant of Defendant's case hearing on August 23, 2016, at 8:00 am, with the Immigration Court at the BTC. _Id._ at Ex. G. (Notice of Hearing, dated 8/14/06, certified copy obtained from the EOIR's Record of Proceeding).

On August 23, 2006, Defendant appeared at a hearing before an Immigration Judge[4] at the BTC. Id. at Ex. H.[5] at Audio 1, 00:00-00:30. Defendant stated that he was represented by counsel, but that his attorney was unable to come to court that day. The Immigration Judge informed the Defendant that the matter would be scheduled for September 5, 2006, at 8:00 am, and that if Defendant did not have a lawyer present at that time, he would be required to proceed without the assistance of counsel. Id. at Audio 1, 00:30-02:21.

Defendant retained William J. Sanchez, Esquire, who filed a motion with the Immigration Court in Miami seeking Defendant's release on his own recognizance, or in the alternative, a reduction of the $7,500.00 cash bail. Id. at Ex. K (Motion and Memorandum of Law in Support of Reduction in Bond, obtained from the defendant's Alien File). On or about September 15, 2006, the date of Defendant's adjourned hearing, Defendant posted cash bond in the amount of $7,500.00, and he was released from ICE custody. Id. at Ex. L (Cash Bail Receipt, dated 9/15/06, obtained from the defendant's Alien File).

---

[4] This Immigration Judge did not place his name on the record, so it is now known who presided over this hearing.

[5] Exhibit H is a disc containing a converted copy of the audio-cassette tape of the removal proceedings in the Immigration Court in Florida, certified copy obtained from the EOIR's Record of Proceeding. Defendant does not contest its authenticity.

Defendant was instructed that he must inform the Immigration Court of any change of address.  Id. at Ex. M. (Form I-830, Notice to EOIR: Alien Address, dated 9/18/06, obtained from the defendant's Alien File).

On October 5, 2006, a member of the court staff served a NOH on both Defendant and Mr. Sanchez, via mail.  It stated that the case was scheduled for a hearing on November 16, 2006, at 9:00 am, at the Immigration Court in Miami.  Id. at Ex. N (Notice of Hearing, dated 10/5/06, certified copy obtained from the EOIR's Record of Proceeding).  The hearing was re-set to December 14, 2006, and Defendant and his counsel were notified. Id. at Ex. O (Notice of Hearing, dated 10/30/06, certified copy obtained from the EOIR's Record of Proceeding).

On December 14, 2006, Defendant appeared before Immigration Judge Teofilo Chapa in Miami, and was represented by Mr. Sanchez.  Id. at Ex. H, at Audio 1, 02:24-04:12.  Mr. Sanchez advised Judge Chapa that Defendant lived at 26 Polk Street in Riverside, New Jersey.  Mr. Sanchez said that Defendant had traveled from New Jersey to Florida for the hearing that day, and that they would be requesting a change of venue because Defendant lived in New Jersey.  Id. at Ex. H. at Audio 1, 02:24-04:12.

Judge Chapa asked how Defendant wished to plead, and Mr. Sanchez stated that Defendant admitted to the charges set forth

in the NTA.  <u>Id.</u>, Ex. H. at Audio 1, 04:12-04:23.  Judge Chapa
marked the NTA to indicate that Defendant admitted to the
charges on December 14, 2006, and that he found that Defendant
was subject to removal because he was an alien present in the
United States without being admitted or paroled, or who arrived
in the United States at any time or place other than as
designated by the Attorney General.  <u>Id.</u> at Ex. F., p. 1.

The Defendant declined to designate a country of removal,
and Judge Chapa designated Ecuador as the country of removal.
Mr. Sanchez advised the Immigration Judge that New Jersey
counsel whom Defendant had retained, would be requesting a
withholding of removal.  Judge Chapa stated that he was inclined
to grant a motion for a change of venue, but that the New Jersey
attorney was required to file any applications for relief --
including any asylum applications -- before he would entertain a
motion to transfer venue.  Judge Chapa explained that if he was
going to transfer venue to New Jersey, he wanted to be able to
send a complete file to the Immigration Judge in New Jersey. <u>Id.</u>
at Ex. H. at Audio 1, 06:15-09:27.

Judge Chapa informed Defendant that he must appear at all
of his court hearings, and that the only excuse for failing to
appear is "if there are exceptional circumstances beyond [his]
control like serious illness or death of an immediate family

member, and nothing less compelling." Id., Ex. H at Audio 1, 09:27-10:13]. Defendant verbally acknowledged that he understood. In addition, Judge Chapa instructed Defendant that he must inform the court of any change of address. Id., Ex. H at Audio 1, 10:13-10:39.

On March 5, 2007, Carlos Moreno, Esquire, on behalf of Defendant, filed a motion with Judge Chapa requesting to transfer venue from Florida to New Jersey, pursuant to C.F.R. Section 3.20(b)(c). Id. at Ex. Q (Change of Venue Motion, filed 3/5/07, obtained from Defendant's Alien File). The motion stated that, "[r]espondent, through counsel, acknowledge service of the Notice to Appear and waives a reading of the allegations, admit the factual allegations and concedes removability as charged.'" Id. at Ex. Q, p. 3. Furthermore, the motion asserted that the defendant lived in New Jersey, and that a transfer of venue was requested so that he could adequately prepare an asylum application for withholding of removal and relief under Article 3 of the Convention Against Torture. Id., pgs. 2-3.

On March 7, 2007, Defendant appeared before Judge Chapa in Miami, represented by Mr. Sanchez. Id., Ex. H at Audio 1, 10:39-11:26]. Judge Chapa asked Defendant if he authorized Mr. Sanchez to speak on his behalf, and Defendant responded affirmatively. Id., Exhibit H at Audio 1, 10:39-11:26. Mr.

Sanchez explained that Defendant lived in New Jersey and was detained by ICE officers in New Jersey, but he was transported to the BTC in Pompano Beach because the detention facility in New Jersey was full. Mr. Sanchez explained that he had represented Defendant when he had appeared before a different Immigration Judge at the BTC in Pompano Beach, and at that time, he had requested to transfer venue from Florida to New Jersey. Id. at Audio 1, 11:26-12:05.

Judge Chapa responded that when the parties had last appeared in December, he had instructed Defendant to file any and all applications for relief, and that after receipt of the applications for relief, he would consider a motion for a transfer of venue. Judge Chapa explained that he wanted Defendant to file his applications for relief before he would consider a motion to transfer venue, because if he granted the motion to transfer venue, he wanted to be able to send a complete file to the New Jersey Immigration Judge. Id. at Audio 1, 12:05-12:15.

Mr. Sanchez responded that Defendant's New Jersey counsel, Mr. Moreno, was supposed to file the asylum application on Defendant's behalf. Id. at Audio 1, 12:15-12:48. Defendant told Judge Chapa that he did not have any applications to file that day, and that Mr. Moreno was going to complete his asylum application. Id. at Audio 1, 12:48-14:24.

Judge Chapa stated that he had received the motion to change venue and had denied it. Judge Chapa said that he would reconsider his ruling after the defendant filed an application for relief. Judge Chapa relisted the matter for June 27, 2007, stating that the date was far enough in the future that Mr. Moreno would have ample time to file the asylum application. Id. at Audio 1, 14:24-17:35. Judge Chapa told Mr. Sanchez that he need not appear on June 27th, because he expected that Mr. Moreno would file the asylum application and that he would reconsider the motion to transfer venue prior to that court date. Id. at Audio 1, 17:35-19:08]. Judge Chapa issued a written opinion denying the motion to change venue. Id. at Ex. R (Judge Chapa's Order Denying Defendant's Motion to Change Venue, dated 3/7/07, obtained from Defendant's Alien File).

On June 27, 2007, Defendant appeared before Judge Chapa in Miami, without counsel. Defendant advised that he was still living at 26 Polk Street, in Riverside, New Jersey, and he said that his attorney, Mr. Moreno, was in New York that day. Id. at Ex. H at Audio 1, 19:08-20:24]. Judge Chapa twice attempted to call Mr. Moreno's office while he was on the record, but each time the call went straight to voicemail. Id. at Audio 1, 20:24-24:12. Judge Chapa asked Defendant whether he had brought an asylum

application with him to court, and the Defendant responded that he had not, because he had not been able to communicate with Mr. Moreno for the past month. Id. at Audio 1, 24:12-24:35.

Judge Chapa stated that he would re-set the hearing one additional time to give Defendant one final chance to file an asylum application. He reiterated that Defendant must file an application for relief, and that if he did not do so, he would not reconsider his decision denying the motion to transfer venue. Judge Chapa explained that he was not inclined to transfer venue, especially in light of Mr. Moreno's lack of communication with Defendant. Judge Chapa said that he was re-setting the case one last time for August 20, 2007, at 11:00 am, and that if Defendant failed to file an asylum application prior to that date, it would be deemed abandoned and he would enter an order for removal. Id., Audio 1, 24:35-29:06].

At the conclusion of the hearing, a member of the court staff personally served a NOH on Defendant. It stated that a hearing was scheduled on August 29, 2007, at 11:00 am with the Immigration Court in Miami. See Ex. T (Exhibit T (Notice of Hearing, dated 6/27/07, certified copy obtained from the EOIR's Record of Proceeding).

On August 29, 2007, Defendant's case was called but neither Defendant nor Mr. Moreno responded. Instead, Mr. Moreno's secretary, Diana Koutsoukos, appeared, and said that Mr. Moreno

was in New York and Defendant was in New Jersey.  Id., Ex. H at
Audio 1, 29:06-29:52.  Judge Chapa stated that he had not waived
Defendant's appearance, and the Court asked if Defendant was
detained.  Ms. Koutsoukos said that Defendant was not detained,
and that she had a letter from Mr. Moreno.  Judge Chapa
responded that he would not accept the letter from Ms.
Koutsoukos, nor would he allow her to speak at the hearing,
because she was not authorized to represent Defendant.  Id. at
Audio 1, 29:52-30:45.  Judge Chapa told Ms. Koutsoukos that she
could file the letter with the clerk, but that in the meantime,
he would go forward with the removal proceeding in absentia. Id.
at Audio 1, 30:45-31:22.

     Thereafter, Judge Chapa made the following findings.  Judge
Chapa previously determined that Defendant had received the NTA
and that he was removable in that he was a citizen of Ecuador
who had arrived in the United States at Nogales, Arizona, on or
about February 10, 2004. Judge Chapa previously denied
Defendant's motion to transfer venue from Florida to New Jersey,
and he informed both the Defendant and counsel that he would not
transfer venue until he had received, at minimum, a filed asylum
application.  Judge Chapa found that the Defendant was arrested
during the course of a fugitive operation in New Jersey, and
that the matter was venued in Florida.  Id. at Audio 2, 00:00-
01:16.  Defendant and counsel were both present in court on

March 7, 2007, at which time Judge Chapa stated that if Defendant filed an asylum application by June 27, 2007, he would reconsider his denial of the motion to transfer venue. Id. at Audio 2, 01:16-01:52. On June 27, 2007, Defendant appeared in court without counsel and without an asylum application, and Judge Chapa unsuccessfully attempted to call the attorney. Judge Chapa rescheduled the case one last time, and he specifically instructed Defendant that if he did not file an asylum application by August 29, 2007, any such application would be deemed abandoned and a removal order would be entered. Id. at Audio 2, 01:52-03:22. On August 29, 2007, neither Defendant nor counsel appeared, and nothing had been filed justifying Defendant's failure to show. Id. at Audio 2, 03:22-04:51.

Judge Chapa found that Defendant, through counsel, previously admitted to the allegations in the NTA and that removability had already established. Judge Chapa additionally found that because Defendant failed to appear, he abandoned any relief for which he may have been eligible to apply, and any additional relief was denied for lack of prosecution. Judge Chapa ordered that Defendant be removed from the United States to Ecuador on the charges contained in the NTA. Id. at Audio 2, 04:51-05:25.

Judge Chapa signed a written decision which stated, among other things, that "[j]urisdiction was established in this matter by the filing of the Notice to Appear issued by the Department of Homeland Security, with the Executive Office for Immigration Review and by service upon the respondent. See 8 C.F.R. § 1003.14(a), 103.5a." Id. at Ex. U (Judge Chapa's written opinion, dated 8/29/07, obtained from Defendant's Alien File).

On September 28, 2007, Mr. Moreno filed a "Motion to Reopen In Absentia Order," pursuant to 8 C.F.R. § 1003.23(b)(4)(ii), with the Immigration Court in Miami. Id. at Ex. W (Motion to Reopen in Absentia Order, filed 9/28/07, obtained from Defendant's Alien File). The motion alleged that although Defendant received notice of his hearing on August 29, 2007, he failed to appear because his daughter was born on July 28, 2007, and he needed to assist his common law wife with taking care of the baby. Id. at p. 2.

On October 18, 2007, Judge Chapa issued a written opinion denying Defendant's motion to reopen the in absentia removal order. Id. at Ex. X (Judge Chapa's written opinion, dated 10/18/07, obtained from Defendant's Alien File). Mr. Moreno appealed Judge Chapa's order to the Board of Immigration Appeals ("BIA"). On July 14, 2008, the BIA issued a written opinion and determined that Judge Chapa had properly denied the motion to

reopen, and it dismissed the appeal. Id. at Ex. Y (BIA written
opinion, dated 7/14/08, obtained from the defendant's Alien
File).

On July 29, 2010, ICE sent, by certified mail, a notice to
Defendant's obligor, Zoraida Laboy, requesting her to produce
Defendant pursuant to the terms of the bond that she posted on
his behalf. The certified mail receipt shows that Ms. Laboy
received the notice on August 9, 2010. Id. at Ex. Z (Notice to
Obligor to Deliver Alien, dated 6/29/10, obtained from the
defendant's Alien File)]. The bond was breached when the
obligor failed to produce Defendant, and on August 3, 2010, ICE
so notified the obligor, and Defendant became an ICE fugitive.
Id. at Ex. aa (Notice - Immigration Bond Breached, dated 8/3/10,
obtained from the defendant's Alien File).

On August 21, 2012, a police officer from the Robbinsville,
New Jersey, Police Department stopped Defendant for a motor
vehicle violation, and learned that there was an active ICE
fugitive warrant lodged against Defendant. Id. at Ex. bb (Form
I-213, Record of Deportable/Inadmissible Alien, dated 8/21/12,
obtained from Defendant's Alien File). ICE officers took
custody of Defendant and detained him pending removal. Id. at
p. 2].

Defendant thereafter retained Custodio Romero, Esquire, and
on September 12, 2012, Mr. Romero filed a second motion to

15

"reopen an in absentia order" with the Immigration Court in Miami. Id. at Ex. cc (Motion to Reopen in Absentia Order, filed 9/12/12, attached to Defendant's brief as Exhibit L). The motion included an affidavit signed by Defendant which stated that he had failed to appear for his hearing on August 29, 2007, because he never received notice of the hearing and was not aware that he was required to be there, and because he could not afford to travel to Miami. Id. at p. 11.

On October 1, 2012, Judge Chapa denied the motion because no substantial grounds had been advanced to warrant reopening the matter, and because the Immigration Court lacked jurisdiction since the matter gone before the BIA. Id., Ex. dd (Written Decision on Motion to Re-Open an In Absentia Order, dated 10/1/12, obtained from the defendant's Alien File).

B. The 2012 Removal

On November 23, 2012, a Warrant of Removal/Deportation was entered against Defendant. Id., Ex. ee (Form I-205, Warrant of Removal/Deportation, dated 11/23/12, obtained from Defendant's Alien File). Also on that date, ICE officers notified Defendant that he was prohibited from entering the United States for a period of 10 years from the date of his departure from the United States, and that under 8 U.S.C. § 1326, it is a crime for an alien who has been removed to enter, attempt to enter, or be

found in the United States during the period in which he or she is barred from doing so without the Attorney General's consent, and that a violation is subject to prosecution for a felony punishable by imprisonment for a period of 2 to 20 years and/or a fine of up to $250,000.  Id., Ex. ff (Form I-294, Warning to Alien Ordered Removed or Deported, dated 11/23/12, obtained from Defendant's Alien File).

On December 3, 2012, Defendant was removed from the United States to Ecuador.  Id., Ex. ee, p. 2.

## II.  Defendant's Motion to Dismiss Indictment

Defendant moves to dismiss the Indictment on two grounds. First, he contends that he was not "removed" as a matter of law because the Florida court did not have the authority to remove him.  As a result, the Florida court's removal order was null and void and the Government cannot prove an essential element of the 8 U.S.C. § 1326 charge, i.e., that Defendant had previously been removed from the United States.  Second, the Indictment must be dismissed pursuant to § 1326(d) because the underlying removal order did not comport with due process.

As to the first point, Defendant relies upon 8 U.S.C. § 1229a which provides that the immigration judges conduct proceedings for deciding the removal of noncitizens present in the United States.  8 U.S.C. § 1229a(a)(1).  Jurisdiction vests when the charging document is filed and the charging document

"*must* include a certificate showing service on the opposing party . . . which indicates the Immigration Court <u>in which the charging document is filed</u>" (including a NTA). 8 C.F.R. § 1003.15(b) addresses the content of order to show cause and Notice to Appear (NTA). It must include certain information, including but not limited to, the charges against the non-citizen, (b)(1), and the address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear." (b)(6).

Defendant does not dispute the authenticity of the NTA[6] but challenges the language contained therein. The NTA states that Defendant is "ORDERED to appear before an immigration judge of the United States Department of Justice at: 625 Evans Street Room 148A Elizabeth NEW JERSEY 07201." <u>See</u> Exhibit B. At the top of the second page of the Form I-862 is a list of the non-citizen's rights and warnings and in a box on the bottom of the page is the "Certificate of Service" which indicates that Defendant was personally served.

Because jurisdiction vests where the charging documents are filed, and § 1003.14(a) mandates that the charging document include a certificate of service which indicates the Immigration Court where the documents are filed, the immigration court

---

[6] The NTA is attached as Exhibits "B" in both parties' submissions.

identified in the NTA is the New Jersey court located in Elizabeth, and not the Florida court in Miami. Thus, Defendant contends, the Florida court and immigration judge located in Miami lacked jurisdiction to adjudicate Defendant's immigration case. Without proper jurisdiction, the Florida court and judge had no authority to issue an order of removal and its August 29, 2007 removal order is void. It follows ten, Defendant avers, he was never removed as a matter of law for the purposes of an 8 U.S.C. § 1326 prosecution.[7]

In response, the Government provides evidence that the Defendant was transferred to a detention facility in Florida, and Defendant does not dispute that he was transferred. See Exs. D and E to Government Memorandum. Thereafter, the INS filed the NTA with the Immigration Court in Florida. See Ex. F to Government Memorandum. The amended NTA shows the Defendant's

---

[7] In order to convict Defendant of illegal reentry, the Government must prove he had been "denied admission, excluded, deported, or removed" before returning to the United States without permission. 8 U.S.C. § 1326; see United States v. Sullivan, No. 00-695, 2002 WL 31819611, at *4 (E.D. Pa. Dec. 12, 2002) ("In order to prove that Sullivan is guilty of violating 8 U.S.C. § 1326, the government must establish beyond a reasonable doubt that Sullivan (1) is an alien; (2) who previously was denied admission, was excluded, deported or removed; (3) and subsequently entered, attempted to enter, or was found in the United States; (4) without having the express consent of the Attorney General."

address as the BTC and the location of the Immigration Court in Florida.

Defendant challenges the "amended" NTA. He argues that both Exhibit B (original NTA) and Exhibit F (amended NTA) contain the exact same certificate of service for Mr. Pando; both certificates of service include the same typographical error,[8] identical signatures for Defendant, and the same name and signature for the Immigration officer who served Defendant with the original charging document. Most importantly, this is the *only* certificate of service that was ever served on Defendant. Because the Government never served that new charging document, identifying the Florida Immigration Court as the place of filing on Defendant, the Florida court did not have jurisdiction because 8 C.F.R. § 1003.14(a) explicitly requires that the new charging document, which was filed in the Immigration Court in

---

[8] Both parties acknowledge that the certificate of service contained within the charging document has an obvious typographical error; it indicates it was served on July 21, 2006, which would have been ten days before Mr. Pando was actually arrested and charged with the underlying immigration matter. Defendant contends that Exhibit B is not the original charging document that was prepared on July 31, 2006 and that his original address was redacted and replaced with a stamp for the Immigration Detention Center in Florida. Per government's Exhibit E, Mr. Pando was transferred to Florida on August 8, 2006. Thus, Defendant argues, Exhibit B had to be altered on or after August 8, 2006 in order to reflect that new address. The Government apparently did not preserve the original charging document.

Florida, include proof that it was also served on Defendant. It was never served on Defendant he contends.

The Government responds that Defendant's definition of jurisdiction is too broad.  8 C.F.R. § 1003.14 provides that jurisdiction "vests, and proceedings before an Immigration Judge, commence when a charging document [i.e., NTA] is filed with the Immigration Court by the service."  8 C.F.R. § 1003.14. Jurisdiction does not vest with the service upon the alien.

This Court agrees with the Government.  Although Defendant challenges the vesting of jurisdiction because the charging document did not include a "certificate showing service," such omission goes to the second prong of § 1003.14, "commencement of proceedings," not to the vesting of jurisdiction.  Section 1003.14 addresses both: "Jurisdiction and commencement of proceedings."  Although Defendant argues that in order for the charging document to vest jurisdiction, the document must contain a certification of service, Defendant cites no support for his proposition.

Even more so, the record before this Court is clear that, despite multiple opportunities, Defendant never challenged the jurisdiction of the Florida court.  Throughout the course of this matter, Defendant had retained three immigration lawyers, and not one of them ever contested the Florida Immigration Court's jurisdiction.  Indeed, as the Government points out (and

Defendant does not contest), Defendant's first attorney, William Sanchez, Esquire, verbally moved to transfer venue from Florida to New Jersey on two separate occasions. [Exhibit H at Audio 1, 02:24-04:12, and 11:26-12:05]. Moreover, Defendant's second immigration law attorney, Carlos Moreno, Esquire, formally filed a written motion to transfer venue from Florida to New Jersey. Ex. Q of Gov't. Mem.  The record before this Court is replete with evidence that all parties concerned, including Defendant who appeared before the Florida court, at no time, challenged that court's jurisdiction.  Although Defendant responds that his attorneys "lacked both the necessary information and understanding of the same to provide effective representation," Def. Mem. at 12, the record does not support such finding.

In his written opinion denying Defendant's motion to transfer venue, the Immigration Judge Chapa stated that "the District Director for the Department of Homeland Security filed the NTA in Miami, Florida." Exhibit R, pgs. 1-2. Similarly, in his written decision ordering Defendant removed, Judge Chapa determined, "[j]urisdiction was established in this matter by the filing of the Notice to Appear issued by the Department of Homeland Security, with the Executive Office for Immigration Review and by service upon the respondent. See 8 C.F.R. § 1003.14(a), 103.5a." Exhibit U.

There was never a challenge to the Florida Immigration Court's jurisdiction, nor for that matter the certificate of service. In short, Defendant's attempt to convert the "certificate showing process" as a jurisdictional requirement is to no avail.[9]

Finally, Defendant argues that the Indictment must be dismissed pursuant to 8 U.S.C. § 1326(d), because the removal order did not comply with due process. The Supreme Court has held that the Due Process Clause requires that a defendant charged with illegal reentry after deportation under 8 U.S.C. § 1326(a) must be permitted to make a collateral challenge to the underlying deportation proceeding and order, when the deportation proceeding was fundamentally unfair and deprived the defendant of the right to obtain judicial review of the deportation order. See United States v. Mendoza-Lopez, 481 U.S. 828 (1987). In 1996, Congress codified the Mendoza-Lopez rule with the enactment of 8 U.S.C. § 1326(d). That statute provides:

> In a criminal proceeding under [§ 1326(a)], an alien may not challenge the validity of the deportation order described in [§ 1326(a)] unless the alien demonstrates that –

---

[9] To this Court's way of thinking, this Court has subject matter jurisdiction over federal questions, 28. U.S.C. § 1331, or diversity of citizenship, 28 U.S.C. § 1332 that no summons ever issued pursuant to Federal rule of Civil Procedure 4 would not deprive this Court of its jurisdiction, only the ability to move the case forward.

> (1) the alien exhausted any administrative
> remedies that may have been available to
> seek relief against the order;
>
> (2) the deportation proceedings at which the
> order was issued improperly deprived the
> alien of the opportunity for judicial
> review; and
>
> (3) the entry of the order was fundamentally
> unfair.

8 U.S.C. § 1326(d).

A defendant must satisfy all three prongs of Section 1326(d) to invalidate a deportation order.  United States v. Charleswell, 456 F.3d 347, 351 (3d Cir. 2006); United States v. Torres, 383 F.3d 92, 99 (3d Cir. 2004).  Defendant argues that this Court need not even consider 8 U.S.C. § 1326(d) because the NTA did not confer jurisdiction upon the Florida Immigration Court.  In other words, the Florida Court lacked jurisdiction and, thus, Defendant's removal order was rendered void.  Even if this Court were to consider § 1326(d), Defendant argues that he need not satisfy the first two prongs because he was "functionally deprived of judicial review by the immigration court's lack of jurisdiction."  Defendant's Brief, at 15. Defendant cites to several decisions of United States District Courts that have held that a deficient NTA, i.e. failure to

advise of time and place, results in a lack of jurisdiction. See Defendant's Br., at 14, n.3.

As the Government points out, Defendant's argument, however, has been recently rejected by the Third Circuit in Nkomo v. Attorney General of the United States, 930 F.3d 129 (3d Cir. 2019).[10] In Nkomo, the Third Circuit, joining seven other circuits, explicitly held that an NTA that fails to specify the time and place of the removal hearing does not deprive the Immigration Court of jurisdiction. Id. at 133-134.

III.    Conclusion

Accordingly, because Defendant has failed to carry his burden under section 1326(d), and he has failed to establish prejudice, for the foregoing reasons, Defendant's Motion to Dismiss the Indictment is DENIED.


                                    s/Renée Marie Bumb
                                    RENÉE MARIE BUMB
                                    United States District Judge

Date: November 21, 2019

---

[10] The Court notes that Nkomo was decided after Defendant filed his Motion to Dismiss.  Unfortunately, neither party timely advised the Court of this legal precedent.